## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUISE DONOVAN, | ) | |
|     Plaintiff, | ) | Civil Action No. 05-0844 |
| | ) | |
| v. | ) | |
| | ) | Judge Lancaster |
| JO ANN B. BARNHART, | ) | Magistrate Judge Lenihan |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | Re: Doc. Nos. 10 & 12 |

## REPORT AND RECOMMENDATION

I.    RECOMMENDATION

It is recommended that the Motion for Summary Judgment filed by Plaintiff be denied.  It is further recommended that the Motion for Summary Judgment filed by Defendant be granted.

II.    REPORT

This is an action timely filed under the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security.  Plaintiff seeks Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-33 and Supplemental Security Income (SSI) benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83.  To obtain DIB, she must show that she became disabled on or before her date last insured.[1]  To obtain SSI benefits, she must show only that she became disabled prior to

---

[1] For purposes of eligibility for DIB, Plaintiff was insured through the date of the ALJ's decision, March 23, 2005.  (Tr. 20, Finding No.1.)

the final decision of the Commissioner.² Both parties have filed motions for summary judgment.          Plaintiff filed her claims for DIB and SSI on May 22, 2003. Her claims were initially denied, and she timely filed a request for hearing before the ALJ. After the February 16, 2005 hearing, the ALJ denied her claim by decision dated March 23, 2005. (Tr. 12-22.) In his decision, the ALJ indicated that he "left the record open after the hearing to allow the claimant to submit records of her mental-health [sic] treatment, but as of the date of [his] decision none had been received." (Tr. 15.) Thereafter, Plaintiff filed a Request for Review of Hearing Decision/Order to the Appeals Council and submitted 36 pages of psychiatric medical evidence dated November 2003 through October 2004 that had not been submitted to the ALJ. (Tr. 10-11.) On May 3, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision noting that the additional evidence submitted did not provide a basis for changing the ALJ's decision. (Tr. 7-10.)

    A.    <u>Relevant Facts</u>

Plaintiff is 49 years old, has a high school education and an associate's degree. She alleges that she became disabled on June 12, 2001, complaining of attention-deficit disorder, depression, and osteoarthritis in the fingers, hips and knees. (Tr. 16.)

The medical evidence submitted to the ALJ consisted of reports from the University of Pittsburgh Medical Center (UPMC) dated November 2000 to July 2003. (Tr. 109-120.) These reports reflect generally Plaintiff's complaints of pain, including some pain in her

---

²Because the statutory and regulatory provisions relevant to SSI track those of DIB, this Court will refer to those provisions applicable only to DIB.

knees, neck, and lower back, and some crepitation in knees. (Tr. 110, 111.) Tenderness and mild puffiness were noted in her left wrist and intermittent pain. (Tr. 111, 112.)

Also submitted to the ALJ was the report of Dr. Willard Reitz who performed a mental exam on August 13, 2003 on behalf of the state agency. (Tr. 121-130.) Diagnostically, Dr. Reitz reported the following:

> Major Depression, recurrent, without psychosis, mild;
>
> Pain disorder associated with both psychological factors and general medical conditions;
>
> Anxiety disorder NOS;
>
> Personality disorder NOS with obsessive-compulsive and paranoid features;
>
> Osteoarthritis, etc., per patient;
>
> Stress level: Severe (the disorders themselves, inter- and intrapersonal, vocational, financial, etc.);
>
> Current GAF of approximately 50.

(Tr. 127-128.) Reitz concluded that Plaintiff's prognosis is fair, and that she recently restarted counseling. Finally, Dr. Reitz rated Plaintiff's limitations in vocational areas as slight and moderate. (Tr. 129-130.)

The ALJ also reviewed Dr. Roy Beerel's examination of Plaintiff in August 2003 on behalf of the state agency. (Tr. 131-134.) Dr. Beerel noted Plaintiff's major complaints as persistent arthritis of the hands, knees, and hips accompanied by low grade, bothersome pain that interferes with concentration. She also complained of attention deficit disorder, depression, and daily headaches. Plaintiff reported taking the following medications: Lexapro, Vioxx, Zyrtec,

Imitrex, Darvon compounds as needed, Astelin nasal spray as needed, and Valium. During physical examination, Dr. Beerel noted that Plaintiff "looks fairly healthy and absolutely in no acute distress." (Tr. 133.) He indicated that there was no peripheral edema, and joints did not show erythema, swelling, or effusion. He noted that Plaintiff "did have some crepitation on her right hip with straight leg raising. Straight leg raising actually with full range 150 degrees with some increased pain in her right hip." (Tr. 133.) She expressed some pain on hand gripping. Dr. Beerel's findings included diffuse rheumatoid arthritic pains with no obvious physical deformities and that her pain "is most tolerable" as long as she takes her medication. He also noted depression as her most serious complaint. (Tr. 133-34.)

The ALJ considered the Mental Residual Functional Capacity Assessment of Sanford Golin, Ph. D. dated September 18, 2003, wherein he rated Plaintiff as not significantly limited, to moderately limited, in all areas. (Tr. 135-38.) Other evidence submitted to the ALJ included Golin's Psychiatric Review Technique form also dated September 18, 2003, wherein he concluded that as to Plaintiff's impairments, her functional limitations were mild to moderate, and evidence did not establish the presence of the "C" criteria. (Tr. 149-52.)

At the February 16, 2005 hearing, the ALJ, before questioning Plaintiff, inquired as to whether there was any outstanding information that needed to be added to the record. (Tr. 32.) The Attorney for Plaintiff responded that he did have an outstanding request to Mercy Behavioral Health for Plaintiff's treatment records. The ALJ responded that he would keep the record open for two weeks to allow for receipt of these records. The ALJ instructed Plaintiff's counsel that if he needed more time, he could request it in writing. (Tr. 32.) Thereafter, the ALJ began his questioning of Plaintiff.

Plaintiff testified that she sees Dr. Harold Sternlick, a psychiatrist, from Mercy Behavioral Health. (Tr. 36.) Plaintiff indicated that her therapist at Mercy Behavioral is Sharon Opates. (Tr. 37.) Plaintiff testified that she suffers from headaches that at times develop into migraines, and that she takes pain medication for arthritis. She indicated that her arthritis pain is at its worst in her hips, knees and hands and that she experiences it daily. (Tr. 37-38.) Plaintiff testified that presently, her pain is not significantly relieved by her medications. (Tr. 39.) Plaintiff also discussed her problems with depression and that she still experiences it even with medication. (Tr. 40.) She testified that she sees Dr. Sternlick once a month for about 15 minutes at a time. She also sees her therapist once a week for approximately 50 minutes at a time, and has been seeing a therapist for about two years. (Tr. 40-41.) Plaintiff indicated that she finds these sessions helpful. (Tr. 41.) She also indicated that she uses a knee brace and a heating pad to help with her pain. (Tr. 41.) Plaintiff testified that she can stand for only an hour at a time, and that she can sit for only two hours at a time and thereafter, she becomes very stiff. (Tr. 42.) She indicated that she always feels depressed and that her energy and concentration levels are very low. (Tr. 42-43.) She indicated that pain and poor sleeping patterns may also affect her ability to work. (Tr. 46.)

A vocational expert testified that an individual of Plaintiff's age, education, work experience, and residual functional capacity could work as a hand packer, an assembler, and a sorter or grader. (Tr. 54.)

Thereafter, the ALJ again instructed Plaintiff's counsel that he was keeping "the record open to the 2nd of March for the records from Mercy Behavioral Health. If indeed they don't seem to be coming in, do let me know . . .." (Tr. 55.) Finally, at the conclusion of the

hearing, the ALJ again stated that he would "look forward to the updates." (Tr. 56.) There is no evidence in the record that counsel for Plaintiff requested that the record remain open beyond March 2, 2005, and Plaintiff has made no assertion in her submissions to this Court to the contrary.

In a decision dated March 23, 2005, the ALJ began his discussion with the statement that he "left the record open after the hearing to allow the claimant to submit records of her mental-health [sic] treatment, but as of the date of this decision none had been received." (Tr. 15.) In his discussion of the medical evidence, the ALJ again noted that he had "not received the records of the claimants [sic] mental-health [sic] treatment, which she reported and testified that she received at Mercy Behavioral Health since November 2001." (Tr. 18, citation omitted.) The ALJ found that although Plaintiff has the medically determinable impairments of depression, anxiety, and personality and pain disorders that are severe, they do not meet or equal the listings at 20 C.F.R. Part 404, Subpart P, App. 1. (Tr. 16-17.) The ALJ determined that Plaintiff has the ability to perform light work with no more than "occasional climbing, balancing, stooping, kneeling, crouching, or crawling; or more than simple, routine, repetitious tasks, with one or two-step instructions; or strict production quotas; or more than occasional contact with the public or co-workers. (Tr. 21, Finding No. 6.)

On March 28, 2005, Plaintiff filed a Request for Review to the Appeals Council, and submitted 36 pages of medical records from Mercy Behavioral Health. (Tr. 171-207.) A review of these records reveals a psychiatric evaluation conducted on November 19, 2003. (Tr. 173-74.) Plaintiff was referred for symptoms related to Depression and Attention Deficit Disorder. She complained of irritability, sadness, low energy, and indicated she tends to isolate

herself. Dr. Harold Sternlicht diagnosed major depression, post-traumatic stress disorder related to a history of spousal abuse, attention deficit/hyperactivity disorder, and assigned a GAF rating of 45. Dr. Sternlicht stated his intention to add Strattera to her prescription medications and continued her on Lexapro. He also suggested therapy, exercise to assist with mood and self esteem, and also suggested work and other activities to assist with the depression. (Tr. 173-74.) The treatment records from Mercy Behavioral Health also reveal that by April 2004, Plaintiff's GAF had increased to 50 and she was enrolled to take classes at Carlow College. (Tr. 177-78.)

On May 3, 2005, the Appeals Council denied Plaintiff's Request for Review. (Tr. 7-10.)

B.   Standard of Review

The standard of judicial review is whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401; Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552 (1988)); Smith, 637 F.2d at 970; Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). "Substantial evidence" is more than a "scintilla." Jesurum v. Secretary of United States Dep't of Health and Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Stunkard v. Secretary of Health and Human Servs., 841 F.2d 57, 59 (3d Cir. 1988); Smith, 637 F.2d at 970. If supported by substantial evidence, the Commissioner's decision must be affirmed.

herself. Dr. Harold Sternlicht diagnosed major depression, post-traumatic stress disorder related to a history of spousal abuse, attention deficit/hyperactivity disorder, and assigned a GAF rating of 45. Dr. Sternlicht stated his intention to add Strattera to her prescription medications and continued her on Lexapro. He also suggested therapy, exercise to assist with mood and self esteem, and also suggested work and other activities to assist with the depression. (Tr. 173-74.) The treatment records from Mercy Behavioral Health also reveal that by April 2004, Plaintiff's GAF had increased to 50 and she was enrolled to take classes at Carlow College. (Tr. 177-78.)

On May 3, 2005, the Appeals Council denied Plaintiff's Request for Review. (Tr. 7-10.)

B.   Standard of Review

The standard of judicial review is whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401; Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552 (1988)); Smith, 637 F.2d at 970; Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). "Substantial evidence" is more than a "scintilla." Jesurum v. Secretary of United States Dep't of Health and Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Stunkard v. Secretary of Health and Human Servs., 841 F.2d 57, 59 (3d Cir. 1988); Smith, 637 F.2d at 970. If supported by substantial evidence, the Commissioner's decision must be affirmed.

The Supreme Court has described a five-part test established by the Commissioner to determine whether a person is disabled:

> The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. See 20 C.F.R. §§ 416.920(a) through (c) (1989). In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. See 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A) (1989). If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. § 416.920(d). If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits. §§ 416.920(e) and (f).

Sullivan v. Zebley, 493 U.S. 521, 525-26 (1990). Accord Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). The initial burden rests with Plaintiff to demonstrate that he is unable to engage in his past work. Stunkard, 841 F.2d at 59; Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981); Dobrowolsky, 606 F.2d at 406; Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). The burden then shifts to the Commissioner to show that other work exists in the national economy that he could perform. Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984). The fifth step is divided into two parts:

> First, the [Commissioner] must assess each claimant's present job qualifications. The regulations direct the [Commissioner] to consider the factors Congress has identified as relevant: physical ability, age, education, and work experience. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f) (1982). Second, [he] must consider whether jobs exist in the national economy that a person having the claimant's qualifications could perform. 20 C.F.R. §§ 404.1520(f), 404.1566-404.1569 (1982).

Heckler v. Campbell, 461 U.S. 458, 460-61 (1983) (footnotes omitted).

Here, Plaintiff argues that this case should be remanded to the ALJ because evidence of Plaintiff's mental health submitted only to the Appeals Council was new and material, and good cause existed as to Plaintiff's failure to provide these mental health records to the ALJ. Plaintiff also argues that this new evidence was dismissed by the Appeals Council without explanation and, therefore, remand is appropriate. Defendant argues that the Appeals Council's decision to deny review is not properly before this Court in that only the final decision of the Agency, (the ALJ's decision after the Appeals Council denies a claimant's request for review), is properly before a federal district court. Further, Defendant contends that evidence submitted to the Appeals Council does not require a sentence six remand in that it was not new, Plaintiff did not have good cause for failing to submit this evidence to the ALJ, and such evidence was not material as it would not have changed the ALJ's decision.

C.  Discussion

The United States Court of Appeals for the Third Circuit has held that when a plaintiff relies on evidence not presented to the ALJ, a district court may remand the case pursuant to sentence six of 42 U.S.C. § 405(g), if the plaintiff can show that the evidence is not only new and material, but also that there is good cause for failure to present such evidence in the proceeding before the ALJ.[3]  Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001). The

---

[3]Sentence six of 42 U.S.C. § 405(g) provides as follows:

The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the

Matthews Court articulated the policy consideration underlying its holding as follows:

> "[I]t is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ. Such a holding is instrumental to the speedy and orderly disposition of Social Security claims."

239 F.3d at 595. The Court emphasized that evidence not presented to the ALJ "'cannot be used to argue the ALJ's decision was not supported by substantial evidence.'" Matthews, 239 F.3d at 594-95 (quoting Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991)). Instead, the plaintiff must make the requisite showing to the district court before the district court may remand to the ALJ where such new and material evidence will be considered. See 42 U.S.C. § 405(g).

Evidence is new if it is not cumulative of evidence already in the record and was capable of being produced to the ALJ. See Szubak v. Sec'y of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984) (medical reports compiled after Secretary's first decision considered new in that they could not have been presented at the hearing). Evidence is material if it is not only relevant and probative, but also of such consequence that there is a "reasonable probability that the new evidence would have changed the outcome of the Secretary's determination." Id. (evidence material where it appeared to corroborate plaintiff's subjective

---

Commissioner of Social Security, and <u>it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;</u> and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.
42 U.S.C. § 405(g) (emphasis added).

10

complaints of pain).

Good cause has been defined by the <u>Matthews</u> court as some justification for the Plaintiff's failure to have obtained and presented the evidence to the ALJ.  239 F.3d at 594-95.  In <u>Matthews</u>, the Third Circuit Court of Appeals affirmed the district court's finding that Matthews had failed to show good cause for not presenting evidence to the ALJ.  <u>Id</u>. at 595.  There, "the Magistrate Judge noted that Matthews had not explained why she did not attempt to obtain [a vocational expert's] evaluation at a time when it could be considered by the ALJ."[4]  <u>Id</u>.  Adopting the Magistrate Judge's Report, the District Court agreed that plaintiff failed to satisfy her burden of showing good cause.  <u>Id</u>.  In affirming the District Court, the Third Circuit Court of Appeals noted the following:

> But Matthews should have known that her ability to work was an issue at the ALJ hearing that was held after remand by the Appeals Council.  Indeed, a vocational expert had testified on July 11, 1996 (at the second ALJ hearing) that Matthews could perform cashier and similar types of jobs.  By then, it should have been clear to Matthews that her arithmetic and reading skills were relevant.  The ALJ even kept the administrative record open to allow Matthews to submit additional evidence.  Yet Matthews did not submit [the vocational expert's] report until more than seven months after the ALJ's adverse decision.  Therefore, we agree with the District Court that Matthews has not shown any good cause why she did not obtain this evidence for the ALJ proceeding.

<u>Id</u>. at 595.

Similarly, Plaintiff here has failed to show good cause as to why the treatment

---

[4] At the administrative level, the ALJ had found that Matthews was not disabled and that she could perform sedentary, unskilled jobs in a low-noise environment, including work as a cashier in a small office.  Thereafter, Matthews filed a request for review with the Appeals Council.  More than seven (7) months after the ALJ's decision, Matthews then submitted a report from a vocational expert "who stated that Matthews lacked the requisite arithmetic and reading skills to work as a cashier."  <u>Matthews,</u> 239 F.3d at 591.  The vocational expert also noted that "Matthews' exertional and nonexertional impairments would preclude her from performing any other gainful work activities in the national economy."  <u>Id</u>.

records from Mercy Behavioral Health were not submitted to the ALJ.  From the time of Plaintiff's filing of her Disability Report dated June 26, 2003, it was clear that her mental health would be in issue.  (Tr. 82-89.)  Plaintiff submits in her Brief in Support of Her Motion for Summary Judgment that "the records from Mercy Behavioral were requested before the administrative hearing but they were not received until the day before the ALJ issued his decision denying the claim."  (Doc. No. 11 at 17.)  Plaintiff continues that she then "immediately forwarded" the records to the Appeals Council and further explains that unlike adversarial legal proceedings, she does not have the benefit of subpoena power or other compelling device to obtain records.  (Doc. No. 11 at 17.)  Nowhere in her submissions to this Court does Plaintiff provide information as to when the records were requested and how long she had been waiting to receive them, why they were not requested sooner, and most importantly, why Plaintiff did not notify the ALJ that she needed more time to secure the records.  At the hearing, the ALJ clearly instructed the Plaintiff that he was looking forward to receiving the treatment records from Mercy Behavioral Health, that the record would remain open for two weeks for admission of these documents into the record, and that Plaintiff could request more time if she had difficulty obtaining them.  (Tr. 32, 55, 56.)  Yet, there is no evidence in the record that Plaintiff ever attempted to notify the ALJ regarding a request for more time to secure these treatment records.

Moreover, a careful review of the Mercy Behavioral Health treatment records reveals that it is unlikely the ALJ's decision would have been different had the records been submitted to him.  Plaintiff contends in her Brief in Support of her Motion for Summary Judgment that "these records confirm the overall picture described by Dr. Reitz in his one-time consultative psychological examination and in particular his global assessment score of 50; the

treatment records confirm that her overall functioning vacillated between 45 and 56 throughout 2004." (Doc. No. 11 at 15.) As stated by Plaintiff, the Mercy Behavioral treatment records confirm other evidence that was submitted to the ALJ; the records do not add additional information that, if considered by the ALJ, would have changed the outcome of his decision. Further, as noted by Defendant in her Brief in Support of Motion for Summary Judgment, Plaintiff misstates one of the bases of the ALJ's decision that the record before him did not "show a condition of 12-months duration that would prevent light exertion, as specified in the [residual functional capacity] adopted here." (Doc. No.13 at 13 (quoting Tr. 18).) Plaintiff argues that the Mercy Behavioral treatment records contradict this basis for the ALJ's decision because the records "clearly demonstrate a condition that lasted at least 12 months." (Doc. No. 11 at 15.) A careful reading of the ALJ's discussion, however, reveals that this statement relates to her physical impairments, and is in no way contradicted by her mental health treatment notes. (See Tr. 18, ¶ 1.)

Further, these records were not new, but in existence at the time of the hearing and capable of being considered by the ALJ with the exercise of some diligence and notice to the ALJ that more time was needed. See Szubak, 745 F.2d at 833.

Consequently, this Court, in light of the policy consideration articulated by the United States Court of Appeals for the Third Circuit in Matthews, cannot recommend that this case be remanded pursuant to sentence six of 42 U.S.C. § 405(g). See Matthews, 239 F.3d at 595.

Plaintiff also argues that the case must be remanded for reconsideration by the ALJ because the Appeals Council dismissed the allegedly new and material evidence without

explanation, but only with a "conclusory" sentence that the new information did not provide a basis for changing the ALJ's decision. This Court must emphasize that "[t]he dismissal of a request for Appeals Council review is binding and not subject to further review." 20 C.F.R. § 404.972. Instead, it is the decision of the ALJ that is subject to federal district court review if the request for review by the Appeals Council is denied. See 20 C.F.R. § 404.981. That is, a denial of a request for review by the Appeals Council is not subject to review by a federal district court. Id. As stated by the Matthews court, "[n]o statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review." 239 F.3d at 594. Consequently, Plaintiff's argument that this Court must remand this case to the ALJ because the Appeals Council summarily denied review is without merit.

III.     CONCLUSION

For the reasons discussed above, it is recommended that the Motion for Summary Judgment filed by Plaintiff be denied. It is further recommended that the Motion for Summary Judgment filed by Defendant be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

    /s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

Dated: May 26, 2006

cc:     The Honorable Gary L. Lancaster
        United States District Judge

        Karl E. Osterhout
        1789 South Braddock Avenue
        Suite 570
        Pittsburgh, PA 15218

        Paul Kovac
        United States Attorneys Office
        700 Grant Street
        Suite 4000
        Pittsburgh, PA 15219